UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CIVIL ACTION NO. _____

ANDY ALFORD, STEVEN BACH, DOUBLE R
FARMS SOKY, LLC, FRESH START FARMS,
FURNWOOD FARMS, LLC, JONATHAN GASKINS,
GILKISON FARMS, LLC,
KEVIN MCCUBBIN, AND FRED SIPES

PLAINTIFFS

v.

**COMPLAINT**

BOYD BROOKS AND ALETHEIA
RISK MANAGEMENT, LLC

DEFENDANTS

* * * * * * * * * * * * * * *

Come now the Plaintiffs, ANDY ALFORD, STEVEN BACH, DOUBLE R FARMS SOKY, LLC, FRESH START FARMS, FURNWOOD FARMS, LLC, JONATHAN GASKINS, GILKISON FARMS, LLC, KEVIN MCCUBBIN, AND FRED SIPES, by and through counsel, and for their Complaint against Defendants, BOYD BROOKS, and ALETHEIA RISK MANAGEMENT LLC, a South Carolina limited liability company state as follows:

**PARTIES**

1.  The Plaintiff, Gilkison Farm, LLC, is a limited liability company organized and existing in good standing pursuant to the laws of Kentucky, with its principal office having an address of 757 Calloway-White Road, Winchester, Kentucky 40391. All of its members are citizens of Kentucky.

Page 1 of 18

2. The Plaintiff, Andy Alford (hereinafter "Alford") is a resident and citizen of Kentucky whose address is 2750 Chalybeate School Road, Bowling Green, KY 42101.

3. The Plaintiff, Steven Bach (hereinafter "Bach") is a resident and citizen of Kentucky whose address is 208 Victoria Lane, Mt. Sterling, KY 40353.

4. The Plaintiff, Double R Farms SOKY, LLC (hereinafter "Double R") is a limited liability company organized and existing in good standing pursuant to the laws of Tennessee with its principal office having an address of 6557 Lamont Road, Springfield, TN 37172. All of its members are citizens of Tennessee.

5. The Plaintiff, Fresh Start Farms (hereinafter "Fresh Start") is a general partnership existing in good standing pursuant to the laws of Kentucky with its principal office having an address of 4109 Sonora Road, Hodgenville, KY 42748. All of its partners are citizens of Kentucky.

6. The Plaintiff, Furnwood Farms, LLC (hereinafter "Furnwood") is a limited liability company organized and existing in good standing pursuant to the laws of Kentucky with its principal office having an address of 600 Ruddles Fort Road, Cynthiana, KY 41031. All of its members are citizens of Kentucky.

7. The Plaintiff, Jonathan Gaskins (hereinafter "Gaskins") is a resident and citizen of Kentucky whose address is 1820 Millerfield Road, Russell Springs, KY 42642.

8. The Plaintiff, Kevin McCubbin (hereinafter "McCubbin") is a resident and citizen of Kentucky whose address is 2380 Old Sonora Road, Hodgenville, KY 42748.

9. The Plaintiff, Fred Sipes (hereinafter "Sipes") is a resident and citizen of Kentucky whose address is 675 Stith Valley Road, Ekron, KY 40117.

10. The Defendant, Boyd M. Brooks (hereinafter "Brooks") is a resident and citizen of South Carolina whose address is 111 Farnsleigh Avenue, Bluffton, South Carolina 29910.

11. The Defendant, Aletheia Risk Management, LLC (hereinafter "Aletheia") is a South Carolina limited liability company with its principal office having an address of 24 Jarvis Creek Way, Hilton Head Island, SC 29926. Aletheia has undertaken all or most of its actions complained of in this Complaint through the action of Boyd Brooks, both as a signatory for Aletheia and as principal for it.

12. Defendant, Boyd Brooks is a member of Defendant, Aletheia Risk Management, LLC and, on information and belief, he is the owner and sole member of Aletheia Risk Management, LLC.

## JURISDICTION

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interests, fees and costs.

14. This Court has personal jurisdiction over Defendant Brooks because Brooks purposely availed himself to the jurisdiction of this Court by acting as a grain broker offering to purchase corn, soybeans and wheat for and on behalf of cash grain traders who were looking for delivery of grain commodities. Personal jurisdiction over Defendant Brooks is also proper because a substantial part of the events giving rise to Plaintiffs' claims against Defendant Brooks, occurred in the State of Kentucky, including but not limited to requirements of performance of contracts in Kentucky and transacting of business for the sale of corn, soybeans, and wheat from the farms of the Plaintiffs located in Kentucky.

15. This Court has personal jurisdiction over Defendant Aletheia because Aletheia purposely availed itself to the jurisdiction of this Court because a substantial part of the events giving rise to Plaintiffs' claims against Defendant Aletheia, occurred in the State of Kentucky, including but not limited to requirements of performance of contracts in Kentucky and transacting of business for the sale of corn, soybeans and wheat from the farms of the Plaintiffs located in Kentucky.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## BACKGROUND

17. Plaintiffs, Alford, Bach, Gaskins, McCubbin, and Sipes are all individuals who operate farming operations as sole proprietorships involved in the business of grain farming and the sale of said grains to third parties.

18. Plaintiffs, Double R. Farms SOKY, LLC, Gilkison Farms, LLC, and Furnwood Farms, LLC operate as limited liability companies involved in the business of grain farming and the sale of said grains to third parties.

19. Plaintiff Fresh Start Farms operates as a general partnership involved in the business of grain farming and the sale of said grains to third parties.

20. Defendant Brooks is and was registered as an Associated Person through the National Futures Association (NFA) with the NFA ID of 035854 to conduct business in the derivatives industry pursuant to the requirements of the federal Commodity Exchange Act and regulations of the Commodity Futures Trading Commission.

21. Defendant Brooks is a member of Defendant Aletheia Management, LLC.

22. Defendant Aletheia is a former member of the NFA.

23. Defendant Brooks formed business relationships with the Plaintiffs for the purpose of marketing the Plaintiffs' grain to third party companies with which Defendant Brooks and Defendant Aletheia had long standing relationships for the purchase of cash grain trades. (See Attached Exhibits "A" and "B").

24. Plaintiffs market their respective agricultural commodities to third parties and on occasion seek out representatives of companies who purchase grain for the purposes of selling their respective grain.

25. The Plaintiffs each met Mr. Brooks, individually as a member and representative of Aletheia as a result of their involvement in the production and sale of grain.

## ALLEGATIONS

### A. FRAUD AND MISREPRESENTATION

26. The Plaintiffs incorporate each and every allegation in paragraphs 1-25 as if fully set out herein and incorporates same by reference.

27. The Defendant Brooks represented to the Plaintiffs that he and his company, Defendant Aletheia were involved and experienced in the grain trading business and could assist the Plaintiffs in the selling of the Plaintiffs' grain crops.

28. The Defendant Brooks and Defendant Aletheia had long standing relationships with various cash grain purchasing companies, including, but not limited to, The Andersons, Inc. and Lansing Trade Group.

29. During the course of the business relationships with the Plaintiffs, the Plaintiffs would contact Defendant Brooks and/or Defendant Aletheia and advise the Defendants that the

Plaintiffs needed to sell certain amounts of crop for various reasons, including but not limited to lack of storage capacity and surplus production, and would provide the Defendants with the quantity to be sold by the Defendants to the Defendants' clients and customers.

30. The Defendant Brooks and Defendant Aletheia would contact their clients, customers and business partners advising them that the Plaintiffs had grain products for sale and the Defendants would make arrangements for the sale and transport of the grain.

31. Upon the sale of the grain, the Plaintiffs would receive payment from the purchaser for the quantity of grain sold by the Plaintiffs to the Defendants' clients and customers.

32. The Defendant Brooks and his company, Defendant Aletheia, caused the Plaintiffs to believe that each of the transactions were single cash grain transactions wherein the Plaintiffs were selling that fixed quantity of grain for a set price.

33. On or about March 24, 2021, the Defendant Brooks, brought representatives of his client, The Andersons, to Kentucky for the purpose of looking at the Plaintiffs' farms to see the types and quantities of crops being sold to The Andersons.

34. On or about March 24, 2021, The Andersons advised many of the Plaintiffs that they were obligated to provide future delivery of crops to The Andersons as a result of contracts that were negotiated by Defendant Brooks and Defendant Aletheia.

35. Plaintiff Alford spoke with Defendant Brooks about his grain exposure and was advised that Defendant Brooks and Defendant Aletheia had contracts limiting his exposure on 15,000 bushels of corn with a minimum price of $3.80 per bushel.

36. Plaintiff Alford was advised by Defendant Brooks that the contracts were presented for the purpose of cleaning up old positions and there was no future exposure or future delivery.

37. Defendant Brooks and Defendant Aletheia failed to inform Alford of financial exposure and entered into contracts without Plaintiff Alford's consent, authority and/or approval for the future delivery of corn at price levels below the minimum price promised by Defendant Brooks.

38. Plaintiff Double R spoke with the Defendant Brooks about the contracts and was advised by Defendant Brooks that the contracts were presented for the purpose of cleaning up old positions and there was no future exposure or future delivery.

39. Defendant Brooks and Defendant Aletheia failed to inform Double R of future financial exposure and entered into contracts without Double R.'s consent, authority and/or approval for the future delivery of corn.

40. Plaintiff Gaskins requested Defendant Brooks assistance in minimizing risk on 30,000 bushels of corn.

41. Defendant Brooks and Defendant Aletheia entered into contracts with The Andersons using farm acres not farmed by Plaintiff Gaskins and failed to inform Plaintiff Gaskins that Defendant Brooks and Defendant Aletheia intentionally overstated Plaintiff Gaskins crop production creating future financial exposure and entered into contracts without Plaintiff Gaskins' consent, authority and/or approval for the future delivery of corn and wheat.

42. Defendant Brooks and Defendant Alethia knew that Plaintiff Gaskins did not grow wheat for grain.

43. Plaintiff Fresh Start requested of Defendant Brooks and Defendant Aletheia an agreement for 40,000 bushels of corn hedge-to-arrive contracts.

44. Plaintiff Fresh Start requested of Defendant Brooks and Defendant Alethia to buy call options on 40,0000 bushels of soybeans against the August 2021 futures price.

45. Defendant Brooks and Defendant Aletheia exited the options positions on the 40,000 bushels of soybeans without Plaintiff Fresh Start's consent, authority and/or approval, thereby creating financial exposure to the Plaintiff Fresh Start.

46. Defendant Brooks and Defendant Aletheia failed to inform Fresh Start of future financial exposure and entered into contracts without Fresh Start's consent, authority and/or approval for the future delivery of corn and wheat.

47. Plaintiff Fresh Start was advised by Defendant Brooks that the contracts were presented for the purpose of cleaning up old positions and there was no future exposure or future delivery.

48. Plaintiff McCubbin spoke with the Defendant Brooks about the contracts and was advised by Defendant Brooks that the contracts were presented for the purpose of cleaning up old positions and that no future delivery was necessary.

49. Plaintiff McCubbin delivered 60,000 bushels of corn.

50. Plaintiff McCubbin was advised that all delivery was completed by Defendant Brooks and there was no future exposure or future delivery necessary.

51. Defendant Brooks and Defendant Aletheia failed to inform Plaintiff McCubbin of future financial exposure and entered into contracts with The Andersons without Plaintiff McCubbin's consent, authority and/or approval for the future delivery of corn.

52. Plaintiff Bach spoke with the Defendant Brooks about the contracts and was advised by Defendant Brooks that no delivery was necessary.

53. Plaintiff Bach requested of Defendant Brooks and Defendant Alethia to buy call options on 130,000 bushels of soybeans against the August 2021 futures price.

54. Defendant Brooks and Defendant Aletheia exited the options positions on the 130,000 bushels of soybeans without Plaintiff Bach's consent, authority and/or approval, thereby creating financial exposure to the Plaintiff Bach.

55. Defendant Brooks and Defendant Aletheia sold call options on 25,000 bushels of wheat against the November 2022 futures price without Plaintiff Bach's consent, authority and/or approval, thereby creating financial exposure to the Plaintiff Bach.

56. Defendant Brooks and Defendant Alethia knew that Plaintiff Bach did not grow wheat for grain.

57. Plaintiff Furnwood spoke with the Defendant Brooks about the contracts and was advised by Defendant Brooks that no delivery was necessary.

58. Defendant Brooks and Defendant Aletheia failed to inform Plaintiff Furnwood of future financial exposure and entered into contracts without Plaintiff Furnwood's consent, authority and/or approval for the future delivery of corn, soybeans, and wheat.

59. Defendant Brooks and Defendant Alethia knew that Plaintiff Furnwood did not grow wheat for grain based on information provided by Plaintiff Furnwood in the Flex Agreement. See Exhibit B.

60. Plaintiff Sipes spoke with the Defendant Brooks about the contracts and was advised by Defendant Brooks that no delivery was necessary.

61. Defendant Brooks and Defendant Aletheia failed to inform Plaintiff Sipes of future financial exposure and entered into contracts without Plaintiff Sipes' consent, authority and/or approval for the future delivery of corn. See Exhibit C.

62. The Plaintiff Gilkison Farm, LLC met with Defendant Brooks who did not present any contracts but advised that he and his client, The Andersons, were there to look at the farming operation since they had purchased cash grain from Plaintiff Gilkison Farm, LLC in the past.

63. Defendant Brooks and Defendant Aletheia failed to inform Gilkison Farm, LLC of future financial exposure and entered into contracts without Plaintiff Gilkison Farm, LLC's consent, authority and/or approval for the future delivery of corn, soybeans and wheat.

64. Thereafter, Plaintiffs received additional contractual documents concerning delivery of grain crops. (See Attached Exhibits "C", "D", "E" and "F")

65. Upon receipt of these documents, the Plaintiffs contacted the Defendant Brooks and his company, Defendant Aletheia concerning the contracts which were presented for the Plaintiff's signatures.

66. When the Plaintiffs inquired directly to Defendant Brooks and Defendant Aletheia about the contracts, the Plaintiffs were advised that the contracts presented were for past sales

and deliveries and that the purpose for contract execution was to clean up the paper trail for past sales.

67. In reliance on Defendant Brooks and Defendant Aletheia warranties, promises, and representations regarding the contracts and in reliance on the Defendants' assurances that the contracts were for prior sales and delivery, and believing such statements to be true, Plaintiffs attached their signatures to some of the contracts.

68. Each of the warranties, promises and representations set forth above operated as a material inducement of the Plaintiffs to enter into and affix their signatures to said contracts.

69. Plaintiffs would not have entered into the contracts nor affixed their signatures to said contracts but for the warranties, promises and representations of Defendant Brooks and Defendant Aletheia.

70. In late 2021 and subsequently, representatives from The Andersons alleged that aforementioned contracts obligate the Plaintiffs to future delivery of grain.

71. The volume of the alleged contractual obligations either far exceed the amounts grown by the Plaintiffs or held in storage by the Plaintiffs.

72. The Plaintiffs have determined from a third-party purchaser that the Defendant Brooks and Defendant Aletheia negotiated the contracts for and on behalf of the Plaintiffs without their consent, approval and/or authority.

73. The warranties, promises and representations of Defendant Brooks and Defendant Aletheia regarding the nature and extent of the contracts they were advised to sign were

false and Defendant Brooks and Defendant Aletheia knew such statements were false at the time they were made.

74. The fraudulent warranties, promises and representations of Defendant Brooks and Defendant Aletheia were made knowingly with the intention, design, and purpose of deceiving Plaintiffs.

75. Said fraudulent warranties, promises and representations, did induce the Plaintiffs to execute the contracts as presented.

76. Plaintiffs have requested Defendant Brooks and Defendant Aletheia to pay for said contracts and to make the Plaintiffs whole but Defendants have failed and/or refused to do so.

77. As a direct and proximate result of the fraud and misrepresentation of Defendant Brooks and Defendant Alethia to Plaintiffs, Plaintiffs have experienced damages in the form of crop delivery and/or monetary payment to resolve these contracts.

**B. UNAUTHORIZED TRANSACTIONS**

78. The Plaintiffs incorporate each and every allegation in paragraphs 1-77 as if fully set out herein and incorporates same by reference.

79. On multiple occasions, beginning in 2019, Defendant Brooks and Defendant Aletheia without consent, authority or approval committed Plaintiffs to transactions without Plaintiffs' authorization.

80. Plaintiffs did not authorize numerous of these transactions, and Defendants' actions in purporting to enter into these transactions were expressly contrary to communications

and direction of Plaintiffs in connection with the marketing of their respective grain crops.

81. After creating the contracts, Defendant Brooks and Defendant Aletheia intentionally and deliberately concealed the facts of Defendants' actions from the Plaintiffs.

82. When the Plaintiffs inquired as to the status of any potential sales or marketing of any grain crops, Defendant Brooks and Defendant Aletheia would deny or downplay the existence, nature and/or extent of the contracts.

83. Additionally, Defendant Brooks and Defendant Aletheia without consent, authorization and/or authority of the Plaintiffs, formed agreements with representatives from The Andersons to roll these contracts for delivery and pricing periods in the future. (See Attached Exhibits "G" and "H").

84. On numerous occasions, Defendant Brooks and Defendant Aletheia fraudulently entered into contracts using the Plaintiffs' information as seller of commodities based upon knowingly or recklessly false statements of fact regarding the existence or availability of grain that did not in fact exist or was not available for the contract described.

85. As a result of the unauthorized transactions, the Defendants Brooks and Aletheia caused these "contracts" to come into existence and without authority, consent or approval of the Plaintiffs.

86. As a result of these unauthorized transactions, Defendants Brooks and Aletheia attempted to obligate the Plaintiffs to the delivery of products that, in many cases, did not exist.

87. As a result of these unauthorized transactions, certain third parties have demanded of the Plaintiffs deliver of commodities that Plaintiffs did not agree to deliver.

88. As a result of the Plaintiffs being unable to perform these unauthorized contracts entered in their names, certain third parties have invoiced the Plaintiffs for amounts that offset the monetary value of the bushels alleged to be deliverable by the Plaintiffs.

89. Defendant Brooks and Defendant Aletheia reached agreements with third party purchasers to "roll" contracts without authority, consent or approval. (See Attached Exhibit "I").

90. These rolls have resulted in greater financial liability claims to the Plaintiffs.

91. These losses and injuries are the direct result of the Defendants' misstatements to certain third-party purchasers and these unauthorized agreements to enter into these contracts.

92. Market conditions have adversely affected the positions of these unauthorized contracts resulting in severe negative positions tied to the physical commodities represented by these contracts based upon pricing strategies which were taken unilaterally by the Defendants.

93. Defendants have engaged in a deliberate effort to cover and hide their actions by failing to disclose to Plaintiffs information regarding the existence, nature and extent of the contracts.

94. The Defendants wrongfully advised Plaintiffs that there were no outstanding contracts and that all contracts had been performed and the contracts presented were for past deliveries and that future delivery was not required.

## C. NEGLIGENCE

95. The Plaintiffs incorporate each and every allegation in paragraphs 1-94 as if fully set out herein and incorporates same by reference.

96. As a Broker licensed through the National Futures Association, Defendant Brooks has a duty and obligation to act in a truthful and professional manner.

97. Defendants Brooks and Aletheia had a duty to provide written confirmation of the contracts and/or any changes to the contracts.

98. National Futures Association Rule 2-8 creates a duty to attain written authorization from the customer before exercising discretion over a customer's commodities futures account.

99. Defendant Brooks and Defendant Aletheia owed these duties to Plaintiffs.

100. Defendant Brooks and Defendant Aletheia breached these duties in that the Defendants failed to provide written confirmation of any contracts and failed to provide proof of any "rolls" or extensions of any contracts and failed to attain written authorization from the Plaintiffs allowing the Defendants discretion over the Plaintiffs' commodities futures accounts.

101. Had the Plaintiffs been provided any notice of the Defendants actions, Plaintiffs would have terminated the contracts or objected to the contracts within the appropriate time.

102. As a direct and proximate result of the Defendants' breaches of these duties or failures to act, the Plaintiffs have suffered harm in that certain third parties have invoiced the Plaintiffs for amounts that offset the monetary value of the bushels alleged to be deliverable by the Plaintiffs.

103. Defendants abused their positions of trust to purport to enter Plaintiffs into contracts without Plaintiffs' authorization or permission, or misled Plaintiffs as to the terms of contracts or availability and existence of grain to which the contract referred.

104. Defendants failed to keep certain Plaintiffs apprised of any contracts that Defendants entered into with the consent of the Plaintiffs.

105. Defendants either recklessly or deliberately delivered false information to the Plaintiffs and certain third parties regarding the existence of the contracts and the nature and extent of the contracts.

107. Defendants, with full knowledge of the crop volumes and existence of the Plaintiffs' growing capacity, intentionally misstated the terms and existence of said contracts.

### D. FAILURE TO ACCOUNT TO CUSTOMER FOR TRANSACTIONS ENTERED ON CUSTOMER'S BEHALF

108. The Plaintiffs incorporate each and every allegation in paragraphs 1-107 as if fully set out herein and incorporate same by reference.

109. The Plaintiffs have requested on numerous occasions for a full accounting of transactions entered on their behalf by Defendants Brooks and Aletheia.

110. The Defendants Brooks and Aletheia have failed to render such accounting statements to the Plaintiffs.

111. The transactions involved are so numerous and complicated that correct amounts of damages for each Plaintiff cannot be ascertained without an accounting.

112. The Defendants Brooks and Aletheia knew or should have known that this failure to maintain an accurate accounting is a devise the Defendants used to intentionally keep the Plaintiffs ignorant of the actions and omissions of the Defendants which are the basis of this action.

113. The Defendants Brooks and Aletheia acted in a manner that was unprofessional, unreasonable, unwarranted, and in direct contravention of their legal and ethical responsibilities regarding the Plaintiffs' accounts (including breaching fiduciary duties that were owed by Defendants to Plaintiffs).

114. Based on the foregoing, the Plaintiffs are entitled to judgment against the Defendants, Boyd Brooks and Aletheia Risk Management, LLC, jointly and severally for:

a. amounts to be determined at trial, but exceeding $75,000, exclusive of interest, fees, and costs; and

b. other damages as may be determined through discovery and subsequent proceedings in this matter.

WHEREFORE, Plaintiffs pray that:

1. A judgment be entered in favor of the Plaintiffs and against the Defendants for fraud and misrepresentation and for associated damages in an amount to be proven at trial, but not less than $75,000, exclusive of interest, fees, and costs;

2. A judgment be entered in favor of the Plaintiffs and against the Defendants for engaging in unauthorized transactions and for associated damages in an amount to be proven at trial, but expected to be several million dollars;

3. A judgment be entered in favor of Plaintiffs and against Defendants for negligence and for associated damages in an amount to be proven at trial, but expected to be several million dollars;

4. A judgment be entered in favor of Plaintiffs and against Defendants finding that Defendants engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

5. Defendants be awarded punitive damages against Plaintiffs in an amount to be determined at trial.

6. An order that Plaintiffs be awarded its reasonable attorneys' fees, consulting fees and other litigation expenses;

7. The award of pre- and post-judgment interest as permitted by law; and

8. Any and all other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

/s/ Michael W. McCain, Jr.
Michael W. McCain, Jr. (KY #99266)
Mattingly, Simms, Robinson & McCain, PLLC
108 West Main Street
Springfield, KY 40069
Phone: (859) 336-3901
Fax: (859) 336-3926
Email: mmccain@msrmlaw.com

/s/ Brian N. Thomas
Brian N. Thomas (KY #85371)
Grant, Rose & Pumphrey
51 S Main St
Winchester, Kentucky 40391
Phone: (859) 744-6828
Fax: (859) 744-6855
Email: grplawky@gmail.com

ATTORNEYS FOR PLAINTIFFS