UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ANDY ALFORD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 22-063-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BOYD BROOKS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter stems from a dispute regarding the brokering of sales of grain, wheat, and corn. Defendants Boyd Brooks ("Brooks") and Aletheia Risk Management, LLC ("Aletheia") filed a motion to dismiss all claims asserted against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 14] After reviewing the motion and the plaintiff's Complaint, the Court concludes that the plaintiffs have failed to state a viable claim for relief. As a result, the defendants' motion will be granted.

**I.**

Plaintiffs Andy Alford, Steven Bach, Double R Farms SOKY, LLC, Fresh Start Farms, Furnwood Farms, LLC, Jonathan Gaskins, Gilkison Farms, LLC, Kevin McCubbin, and Fred Sipes (collectively, "the plaintiffs") are involved in the cultivation and sale of grain, wheat, and corn. Defendant Brooks formed Aletheia to provide risk management services to grain farmers by securing better prices for their product and analyzing market conditions for grain crops. Brooks is a registered through the National Futures Association ("NFA"), and is allowed "to conduct business in the derivatives industry pursuant to the requirements of the

federal Commodity Exchange Act and regulations of the Commodity Futures Trading Commission." [Record No. 1, p. 4]  Brooks and Aletheia had relationships with cash grain purchasing companies, like The Andersons, Inc.

Brooks also had business arrangements with the plaintiffs to help market their grain to third parties. [Record No. 1, p. 5]  Occasionally, the plaintiffs would contact Brooks and/or Aletheia and inform them that the plaintiffs had to sell certain amounts of grain for various reasons (including lack of storage capacity or surplus production).  Brooks and Aletheia would then contact their clients, customers, and business partners to arrange for the sale and transport of the plaintiffs' grain.  Thereafter, the plaintiffs would receive payment for the quantity of grain sold.  The plaintiffs allege that Brooks and Aletheia led them to believe that these transactions "were single cash grain transactions wherein the Plaintiffs were selling that fixed quantity of grain for a set price." [Record No. 1, p. 6]

On March 23, 2021, Brooks brought representatives of his client, The Andersons, to survey the plaintiffs' farms and to observe the crops being sold to the Andersons.  The Andersons allegedly advised the plaintiffs' that they were obligated to provide future delivery of crops based on contracts negotiated by Brooks and Aletheia.  All of the plaintiffs assert that Brooks and Aletheia did not inform them of their future financial exposure and entered into contracts without their approval, consent, or authority for the future delivery of crops.

The plaintiffs contend that they later received additional contractual documents concerning the delivery of grain crops beyond their original agreements brokered by Brooks and Aletheia.  Thereafter, they contacted Brooks and Aletheia about the new contracts and were told that the contracts were for past deliveries and were only intended to "clean up" the paper trail.  Some of the plaintiffs relied on the representations of Brooks and/or Aletheia and

signed the contracts. Thereafter, representatives from The Andersons asserted that these new contracts obligated the plaintiffs to provide future grain deliveries. However, the volume of these alleged obligations exceeded the amount of crop grown or held in storage by the plaintiffs. The plaintiffs claim that they relied on the statements of Brooks and/or Aletheia that the contracts were for prior sales and delivery but assert that these statements were false. They argue that they were induced into signing the contracts based on the representations of Brooks and/or Aletheia and would not have signed the contracts otherwise.

The plaintiffs filed this action bringing claims against Brooks and Aletheia for: (i) fraud; (ii) unauthorized transactions; (iii) negligence; and (iv) failure to account to customer for transactions entered on the customer's behalf. [Record No. 1] Brooks and Aletheia have moved to dismiss the plaintiffs' Complaint, arguing that it fails to state claims upon which relief may be granted.

## II.

The Court determines whether a complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" when considering a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, the plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The Court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

**III.**

The defendants argue as an initial matter that all the claims asserted against Brooks in his personal capacity should be dismissed because he operated through a limited liability company (i.e., Aletheia).[1] Next, they assert that the plaintiffs' fraud claim should be dismissed because it was not pled with particularity and because the Complaint does not contain actionable misstatements. Additionally, the defendants contend that the plaintiffs have not stated a viable claim for negligence. Finally, they assert that the plaintiffs' claims for "unauthorized transactions" and "failure to account to customer for transactions entered on the customer's behalf" should be dismissed because they are not cognizable under Kentucky law.

**i.**

As noted above, the defendants argue that the plaintiffs have failed to meet the heightened pleading standard under Rule 9(b) to state a claim for fraud. Relatedly, they contend that the plaintiffs' fraud claim fails because it does not include any actionable misstatements.

To properly allege a claim of fraud, the plaintiffs must show: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137,

---

[1] Members of limited liability companies are not personally liable by reason of being a manager or agent of a limited liability company. KRS § 275.150(1); *Racing Investment Fund 2000, LLC v. Clay Ward Agency, Inc.*, 320 S.W.3d 654, 659 (Ky. 2010). However, KRS § 275.150 explains that "[s]ubsection (1) of this section shall not affect the liability of a member, manager, employee, or agent of a limited liability company for his or her own negligence, wrongful acts, or misconduct." *See also McQueen v. Huddleston*, No. 13-CV-00302V(F), 2017 U.S. Dist. LEXIS 171783, at *20 (W.D.N.Y. Oct. 16, 2017) (applying KRS § 275.150). The Court will not address whether the claims should specifically be dismissed against Brooks in his personal capacity because the plaintiffs have not stated claim upon which relief may be granted.

142 (Ky. Ct. App. 2010) (referencing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)). "A misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future." *Id*. (quoting *Filbeck v. Coomer*, 298 Ky. 167 (1944)). To properly allege fraud, a complaint must include the "time, place, and content of the misrepresentation on which the plaintiff relied, the fraudulent scheme, the intent of the defendants, and the resulting injury." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 821 (E.D. Ky. 2013). Additionally, "[a] mere statement of opinion or prediction may not be the basis of an action." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). Claims of fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b).

While the plaintiffs' Complaint adequately alleges the content of the misrepresentations, the plaintiffs fail to allege time and place. Instead, the Complaint contains allegations that Brooks and Aletheia "caused the [p]laintiffs to believe that each of the transactions were single cash grain transactions wherein the [p]laintiffs were selling that fixed quantity of grain for the price." [Record No. 1, p. 6] Additionally, the Complaint contains assertions that the plaintiffs asked Brooks and Aletheia about certain contracts and Brooks and Alethia explained that the plaintiffs' contracts were "for past sales and deliveries and that the purpose for contract execution was to clean up the paper trail for past sales." [Record No. 1, p. 11] The plaintiffs assert that they were induced into signing contracts based on the statements from Brooks and Aletheia limiting their future exposure. However, the Complaint is devoid of any indication of the time and place of the alleged misrepresentations. *See Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (explaining that, among other things, a plaintiff must plead when and where the alleged

Case: 5:22-cv-00063-DCR  Doc #: 19  Filed: 08/02/22  Page: 6 of 12 - Page ID#: 114

fraudulent statements were made). Because of this failure, the plaintiffs have failed to plead fraud with particularity and that claim will be dismissed.

**ii.**

For a claim of negligence, a plaintiffs must show: "(1) a duty owed by the defendant[s] to the plaintiff[s], (2) breach of that duty, (3) injury to the plaintiff[s], and (4) legal causation between the defendants' breach and the plaintiffs' injury." *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). And for a regular negligence claim, the standard of care is that of ordinary care, meaning "such care as a reasonably prudent person would exercise under the circumstances." *Id*. (quoting *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959)).

Negligence *per se* is defined as "a negligence claim with a statutory or regulatory standard of care substituted for the common law standard of care." *Id*. at 213 (internal citations and quotations omitted). Kentucky has codified the common-law doctrine of negligence *per se* at KRS § 446.070. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). KRS § 446.070 allows a damaged party to recover "for a violation of a statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008). Importantly, "Kentucky courts have held that the 'any statute' language in KRS § 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations or local ordinances." *Id*.

Here, the plaintiffs' Complaint contains allegations that Brooks is a broker licensed through the NFA.[2] They argue that Brooks' status as a licensed broker subject to the rules of

---

[2] Looking at the Complaint, it is not entirely clear whether the plaintiffs are asserting a standard negligence claim or a claim of negligence *per se*. The plaintiffs' response to the defendants'

the NFA creates a duty and obligation to act in a truthful and professional manner. Further, the Complaint includes an allegation that the defendants were required to "attain written authorization from a customer before exercising discretion over a customer's commodities futures account" and provide "written confirmation" regarding contracts and changes in contracts. [Record No. 1, p. 15] And the Complaint specifically cites NFA Rule 2-8 in discussing the defendants' duty to obtain written authorization. [*Id*.] The plaintiffs allege that Brooks and Aletheia breached these duties by failing to obtain written authorization for additional transactions and, as a direct and proximate result of these breaches, they suffered financial harm.

The plaintiffs rely on the rules of the NFA, authorized by Congress under the Commodity Futures Trading Commission and the Commodity Exchange Act, 7 U.S.C. § 1, *et. seq.*, to assert a statutory standard of care. But Kentucky courts have clearly indicated that the doctrine of negligence *per se* extends only to the laws enacted by the Kentucky General Assembly. *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *Alderman v. Bradley*, 957 S.W.2d 264, 266-67 (Ky. App. 1997). The plaintiffs cannot utilize the duties created by the Commodity Exchange Act and the NFA to establish a claim of negligence *per se*.

Accordingly, the plaintiffs' negligence claim fails.

### iii.

---

motion to dismiss states that they have "alleged sufficient facts to establish negligence *per se*" and explains that they are relying on NFA Rule 2-8 to establish a statutory standard of care. Accordingly, they appear to be asserting a claim for negligence *per se*.

The plaintiffs also assert a claim for "unauthorized transactions", contending that the defendants entered transactions without their consent, authority, or approval. Additionally, the they allege in a separate claim that the defendants failed to provide a full accounting of the transactions entered on their behalf by Brooks and Aletheia. The defendants argue that these claims for "unauthorized transactions" and "failure to account" are not cognizable claims under Kentucky law. In response, the plaintiffs counter that, as registered brokers under the NFA, Brooks and Aletheia violated certain rules promulgated by the NFA when they: (1) entered unauthorized transactions on behalf of the plaintiffs and (2) did not provide a full accounting when requested. The plaintiffs contend that the defendants' failure to comply with the NFA Rules violates the provisions of the Commodity Exchange Act, 7 U.S.C. § 1, *et. seq*.

For the "unauthorized transaction claim," the plaintiffs allege that the defendants entered contracts on their behalf but without their consent, authority, or approval. They further state that the defendants exercised control over their accounts but without their written authorization. In response, the plaintiffs argue that this claim is based on Rule 2-8 on the NFA, which requires that "[n]o Member or Associate shall exercise discretion over a customer's commodity futures or cleared swaps account unless the customer or account controller has authorized the Member or Associate, in writing (by power of attorney or other instrument) to exercise such discretion." National Futures Association, Rule 2-8(a), https://www.nfa.futures.org/rulebook/rules.aspx-Section=4&RuleID=RULE%202-8 (last visited July 19, 2022). Additionally, Rule 2-8 requires that the member maintain records regarding accounts in which discretionary authority has been granted. *Id*.

The plaintiffs also make a claim for "failure to account", contending that the defendants failed to provide adequate bookkeeping and accounting. They argue that they requested a full

accounting of all the transactions entered on their behalf by the defendants but have never received such statements. In their response to the motion to dismiss, the plaintiffs assert that the defendants violated NFA Rule 2-10 which requires that "[e]ach Member . . . maintain adequate books and records necessary and appropriate to conduct its business." The plaintiffs also allege that the failure to provide a complete accounting violates Rules 2-30 and 2-37 of the NFA Rules.[3] They argue that because the defendants violated the NFA Rules, they have stated a claim for "failure to account."

At the outset, the Court recognizes that the plaintiffs did not provide any indication they were relying on the Commodity Exchange Act and the NFA Rules when they set out their claims for "unauthorized transactions" and "failure to account" in their Complaint.[4] But even if they had, the plaintiffs could not properly assert claims for alleged violations of the NFA rules because the NFA is a self-regulatory organization.

Originally, the Futures Trading Act, Pub. L. No. 67-66, 42 Stat. 187, was enacted "to regulate boards of trade on which futures trading occurred, primarily to prevent price manipulation and what many perceived as excessive speculation in grains." *Salmon Forex, Inc. v. Tauber*, 8 F.3d 966, 970 (4th Cir. 1993). Not long after enactment, the Futures Trading Act was declared unconstitutional, and Congress enacted the Grain Futures Act of 1922, Pub. L. No. 67-331, 42 Stat. 998, in its place. *Id*. Over time, "the statutory framework established

---

[3] Additionally, the plaintiffs assert in their response to the motion to dismiss that the defendants did not provide monthly statements to the plaintiffs concerning open contracts with prices and unrealized profits or losses as required by 17 C.F.R. § 1.33. However, the plaintiffs' Complaint does not make any mention of a failure to provide monthly statements or a reference to 17 C.F.R. § 1.33.

[4] The plaintiffs did reference NFA Rule 2-8 with respect to their negligence claim.

by the Grain Futures Act gradually developed into the Commodity Exchange Act in its present form." *Id*. The Commodity Exchange Act is intended "to curb price manipulation, ensure the financial integrity of commodities transactions, avoid systemic risk, protect market participants from fraud or abusive sales practices, and promote responsible and fair competition within the commodities market." *Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 886 (7th Cir. 2019). Specifically, the core of the Act is "that no person shall enter into, or offer to enter into, a transaction involving the sale of a 'commodity for future delivery,' unless it is conducted on or through a board of trade designated and regulated by the Commodity Futures Trading Commission ("CFTC") as an exchange." *Salmon Forex, Inc*., 8 F.3d at 970.

      The Commodity Exchange Act developed a system of self-regulation to oversee participants in the commodity futures markets. *Effex Capital*, 933 F.3d at 886. Additionally, "the Commodity Futures Trading Commission Act of 1974 authorized the creation of registered futures associations as self-regulatory organizations ("SRO") to complement the Commodity Futures Trading Commission's (the "Commission" or the "CFTC") regulation of commodity futures markets and their participants." *Id*. The Commodity Exchange Act also "requires that SROs set forth many types of regulations and rules, including rules that 'provide that its members and persons associated with its members shall be appropriately disciplined . . . for any violation of its rules.'" *Id*. (citing 7 U.S.C. § 21(b)(8)).

      The NFA is a registered SRO under the Commodity Exchange Act, subject to the authority of the CFTC. *Id*. at 888; https://www.nfa.futures.org/ (last visited July 19, 2022) (explaining that the NFA is an industry wide self-regulatory organization for the United States derivatives industry designated by the CFTC as a registered futures association). The

Commodity Exchange Act "requires registered futures associations such as the NFA to 'provide a fair, equitable, and expeditious procedure through arbitration or otherwise for the settlement of customers' claims and grievances against any member" of the association. *IKON Global Mkts., Inc. v. CFTC*, 859 F. Supp. 2d 162, 164 (D.D.C. 2017) (citing 7 U.S.C. § 21(b)(10)).

"[I]t is well settled that no direct cause of action exists for violations of self-regulatory organizations" rules and regulations. *Bloch v. Prudential-Bache Sec.*, 707 F. Supp. 189, 195 (W.D. Pa. 1989); *cf. Nicholas v. Saul Stone & Co.*, LLC, No. 97-860, 1998 U.S. Dist. LEXIS 22977, at *46-47 (D.N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000) ("[T]hird party enforcement of the rules of a self-regulatory organization has been considered and rejected by a number of other Courts."). In *Bloch v. Prudential-Bache Sec.*, the plaintiffs attempted to argue a claim that the defendant breached an agreement to adhere to the rules of the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD"). *Id*. The plaintiffs contended that "investors were third party beneficiaries of the agreements between brokerage firms and the NYSE or NASD, and as such [were] entitled to enforce the rules." *Id*. The Court held that "third party beneficiary liability seems incongruous with the large body of case law holding that no private cause of action exists for violation of the rules of self-regulatory organizations." *Id*. at 196; *cf. Gallier v. Woodbury Fin. Servs., Inc.*, No. 14-cv-888, 2015 U.S. Dist. LEXIS 35675, at *8 (S.D. Tex. Mar. 23, 2015) (rejecting the plaintiffs' contention "that [c]ontracts between [Financial Industry Regulatory Authority] and its members give customers the right as third-party beneficiaries of those contracts to sue the members or a member's manager for violating a FINRA rule"); *Nicholas,* 1998 U.S. Dist. LEXIS 22977, at *46-47 (concluding that the plaintiff investors could not bring a breach of

contract claim against the defendant brokers for violations of the NFA bylaws and compliance rules because the plaintiffs were not intended third-party beneficiaries of the contractual relationship between the NFA and its registered brokers); *see also In re Lake States Commodities*, 936 F. Supp. 1461 (N.D. Ill. 1996) (concluding that the plaintiffs could not bring a private cause of action for an alleged breach of NFA Bylaw 1101 or its corresponding interpretive notice).

Here, the plaintiffs base their "unauthorized transactions" and "failure to account" claims upon violations of the rules of the NFA. However, as outlined above, the plaintiffs cannot bring claims for violations of the rules of a self-regulatory organization, like the NFA. Thus, the plaintiffs do not have cognizable claims for "unauthorized transactions" and "failure to account" and these claims must be dismissed.

In accordance with the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendants' motion to dismiss [Record No. 14] is **GRANTED**.

2. The plaintiffs' claims for fraud, unauthorized transactions, negligence, and failure to account are **DISMISSED**, with prejudice.

Dated: August 2, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky